IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

IN RE:                               )
                                     )
RYAN WAYNE CASHATT and               )    Case No. 13-50507-13
KELLY JO CASHATT,                    )
                                     )
         Debtors.                    )

## ORDER SUSTAINING, IN PART, AND OVERRULING, IN PART, DEBTORS' OBJECTION TO CLAIM NUMBER 25 AND ALLOWING SUCH CLAIM AS AN ADMINISTRATIVE EXPENSE IN THE AMOUNT OF $5,513.05

The Debtors, Ryan and Kelly Cashatt, filed an objection to the claim of Matthew D. Thomson (Landlord) for an administrative expense for post-petition, pre-rejection rent on nonresidential real property. For the reasons that follow, the Landlord's claim will be allowed as an administrative claim in the amount of $5,513.05.

The Debtors filed a chapter 13 bankruptcy petition on August 8, 2013. Prior to filing, they operated a business on premises which they leased from the Landlord. On August 21, 2013, the Debtors filed a Chapter 13 Plan which proposed to reject the lease. They did not file a motion requesting the Court to approve rejection of the lease.

The Landlord asserts an administrative claim under 11 U.S.C. § 365(d)(3), which provides, in relevant part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such

> lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.[1]

This statute required the Debtors to make post-petition rent payments to the Landlord until the lease was either assumed or rejected. Post-petition, pre-rejection rents are entitled to administrative expense status.[2]

Thus, the question here is whether, and when, the Debtors effectively rejected the lease. Section 365 provides, in relevant part:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> * * *
>
> (d)(4)(A)  Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of --
>
>> (i) the date that is 120 days after the date of the order for relief; or
>>
>> (ii) the date of the entry of an order confirming a plan.
>
> (B)(i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.[3]

---

[1] 11 U.S.C. § 365(d)(3).

[2] *Burival v. Roehrich* (*In re Burival*), 613 F.3d 810, 812 (8th Cir. 2010) ("[Section] 365(d)(3) claims have priority status.").

[3] 11 U.S.C. §§ 365(a) and (d)(4)(A).

2

Under these provisions, a trustee (or debtor) must assume or reject an unexpired lease of nonresidential real estate no later than the earlier of 120 days after the order for relief or the date of the entry of an order confirming a plan, unless the period is extended.[4]

A debtor's rejection of a lease under § 365 often comes in the form of a motion.[5]  In a Chapter 13 case, however, § 1322(b)(7) provides that a plan may propose to reject an unexpired lease.[6]  The Debtors assert their rejection became effective when they filed their Plan proposing to reject.  The Landlord says he did not receive the Plan until after the September 12, 2013 meeting of creditors, when Debtors' counsel sent it as an attachment to an e-mail saying the Debtors had tendered the keys to counsel and had vacated the premises.  There is nothing in the record showing that the Debtors actually served the Plan on the Landlord prior to that e-mail.  Nevertheless, regardless of when the Landlord received service of the Plan, "[i]t is clear under § 365(a) that rejection of an unexpired lease does not take place until the bankruptcy court *approves the rejection*."[7]

> A declaration to assume or reject an unexpired lease of nonresidential real estate alone does not result in an effective assumption or rejection.  The intended assumption or rejection must be approved by

---

[4]  *In re Twin Cities Stores, Inc.*, 421 B.R. 522, 523 (Bankr. D. Minn. 2009).

[5]  *Milstead v. Tele Media Broadcasting* (*In re Milstead*), 197 B.R. 33, 35 (Bankr. E.D. Va. 1996) ("Court approval [of a lease rejection] is usually in the form of an order approving a trustee's motion to reject.").

[6]  11 U.S.C. 1322(b)(7); *In re Milstead*, 197 B.R. at 35.

[7]  *In re Milstead*, 197 B.R. at 35 (emphasis added);  *In re Twin Cities Stores*, 421 B.R. at 523 ("A proposed assumption or rejection does not become effective unless and until it is approved.").

3

the bankruptcy court. See 11 U.S.C. § 365(a). Approval by the court is not a perfunctory or administrative act.[8]

Consequently, because the Debtors did not file a motion to reject the lease, rejection did not take place until the earlier of 120 days after filing the Petition, December 6, 2013, or confirmation of the Plan, March 24, 2014. The lease was, therefore, not effectively rejected until December 6, 2013.

The next question, then, is the amount of the administrative claim. The Debtors assert that the administrative claim should be zero because they were no longer operating the business by the time they filed their bankruptcy petition, and so there was no benefit to the estate.[9]

Section 365(d)(3) was enacted in 1984 as a way to protect the interest of commercial landlords who perceived as being were unfairly disadvantaged in bankruptcy proceedings.[10] Courts have generally found that § 365(d)(3) contains an unambiguous statement of Congressional intent that the lessors of nonresidential property should receive the rent provided for in the lease until the lease is rejected.[11] Although some courts have held that a nonresidential landlord must show benefit to the estate in order to be given administrative expense status, the Eighth Circuit has held that a lessor of nonresidential real property is entitled to

---

[8] *In re Twin Cities Stores, Inc.*, 421 B.R. at 523. *See also In re Ashby*, 2000 WL 33712476 (Bankr. D. Idaho May 18, 2000).

[9] The Debtors offered no evidence as to when they stopped conducting business on the premises, and the Landlord did not stipulate that they did so prior to September 12, 2013.

[10] *Burival v. Creditor Comm. (In re Burival)*, 406 B.R. 548, 553 (B.A.P. 8th Cir. 2009) (citing Pub. L. No. 98-353, 98 Stat. 333 (1984); 130 Cong. Rec. S8891 (1984), *reprinted in* 1984 U.S.C.C.A.N. 590, 598-99), *aff'd Burival v. Roehrich (In re Burival)*, 613 F.3d 810 (8th Cir. 2010).

[11] *In re Schnitz*, 293 B.R. 7, 9 (Bankr. W.D. Mo. 2003).

an administrative expense for rent due under a lease, notwithstanding the requirements of § 503(b)(1)(A).[12]

Under this premise, the Eighth Circuit has adopted a bright-line billing date approach to determining claim amounts: "if a rent payment is due during the post-petition, pre-rejection period, it must be paid pursuant to Section 365(d)(3)."[13] If a debtor fails to make the rent payment due during the post-petition, pre-rejection period, that unpaid amount becomes a claim against the debtor's bankruptcy estate, regardless of whether the estate benefitted from it.[14]

Therefore, any rents that came due during the post-petition, pre-rejection period are eligible for administrative claim status. The Landlord initially filed a claim in the amount of $19,400. However, he subsequently amended his claim through his response to the objection to his claim and thus has agreed to limit his claim amount to $5,513.05 in satisfaction of the post-petition, pre-rejection rents. He will be allowed an administrative claim in that amount.

For the foregoing reasons, the Debtors' Objection to Matthew D. Thomson's administrative claim is SUSTAINED, IN PART, AND OVERRULED, IN PART.

---

[12] *In re Burival*, 613 F.3d at 812; *Burival v. Creditor Comm. (In re Burival)*, 406 B.R. at 555 ("Section 365(d)(3) excludes post-petition, pre-rejection obligations under leases of nonresidential real property from the cost-benefit analysis used to determine if an expense is an actual necessary cost or expense of preserving the debtor's bankruptcy estate and instead guarantees payment of post-petition, pre-rejection obligations regardless of any benefit to the debtor or its estate."). *In re Schnitz*, 293 B.R. at 9 ("[A] lessor [of nonresidential real property] is entitled to an administrative expense for rent due under a lease, notwithstanding the requirements of § 503(b)(1)(A) that, to be accorded administrative expense status, expenses must be actual and necessary costs of preserving the bankruptcy estate.").

[13] *Burival v. Creditor Comm. (In re Burival)*, 406 B.R. at 552.

[14] *Id* at 555.

The Court holds that Matthew D. Thomson is entitled to an administrative claim in the full amount of his amended claim, $5,513.05.

    IT IS SO ORDERED.

Dated:  4/7/14                                                       /s/ Arthur B. Federman
                                                                             Chief Bankruptcy Judge